The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chrystal Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The defendant-employer is self-insured.
4. Plaintiff's average weekly wage was $226.82.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff's date of birth is 11 November 1933, and she was sixty-one years of age at the time of the hearing. She has a high school education and has worked in manual labor type jobs all of her working career.
2. Plaintiff worked with the defendant as a food service assistant beginning in 1989. In this capacity, plaintiff's job duties required her to work in the dietary tray line which entailed serving approximately 750 trays of food for breakfast and lunch. Plaintiff worked from 5:00 am until 2:00 pm five days per week. Her job duties included taking trays off a cart, then placing them one at a time on the tray line and placing name cards and a menu on each tray. Another job required her to take an insert from a heated bin, scoop food into it, and place the bin onto a tray. Plaintiff's job as a checker required her to lift each tray filled with food and place the tray on a cart to be covered. This particular task required repetitive overhead lifting and some stooping. During the course of plaintiff's employment in this capacity, her job duties required repetitive use of her hands and arms.
3. Plaintiff began having pain and discomfort in her hands and right shoulder in 1991, and she sought medical treatment for the same. Plaintiff's earlier claim for workers compensation benefits was denied by the Industrial Commission based on her failure to prove a compensable injury by accident which occurred on 8 March 1991.
4. Plaintiff continued working for the defendant until 27 April 1993, at which time she was taken out of work by Dr. Laurence E. Dahners due to the repetitive nature of her employment. On said date, plaintiff was examined by Dr. Dahners and was diagnosed with carpal tunnel syndrome and shoulder impingement syndrome. On 5 August 1993, plaintiff underwent carpal tunnel release surgery and acromioplasty for her shoulder impingement. Plaintiff remained out of work until she was released to return to light duty on 27 September 1993. The defendant did not provide light duty work for plaintiff at this time, and due to her condition, plaintiff was not capable of returning to her full duties.
5. Plaintiff continued treating with Dr. Dahners until she was released to return to her regular job on 25 October 1993. Plaintiff worked on the serving line for four (4) days, ladling food onto dishes, which caused her pain in her arms. On her 5 November 1993 visit with Dr. Dahners, plaintiff's carpal tunnel syndrome had resolved, but she was continuing to have pain in her shoulder, especially with extreme motion and activity. Therefore, she was released to return to work on light duty with restrictions of no work on the serving line and decreased repetitive lifting with her right arm. Plaintiff was not capable of returning to work with defendant at this time because of the repetitive nature of her job duties.
6. On 28 February 1994, plaintiff underwent an open acromioplasty of her right shoulder with removal of the end of her collarbone. Plaintiff participated in physical therapy for strengthening and remained out of work. As of 6 May 1994, plaintiff reached maximum medical improvement and was released to return to work with restrictions of no overhead activities or heavy labor functions.
7. Even though plaintiff suffered from symptoms of carpal tunnel syndrome and shoulder impingement prior to 27 April 1993, these conditions did not become disabling until said date. Beginning 27 April 1993, plaintiff suffered an occupational disease which rendered her incapable of earning, at any job, the wages she was receiving at the time of her incapacity, and on said date, plaintiff was informed by competent medical authority of the nature and work-related cause of the disease. Plaintiff filed a claim with respect to her condition on 12 April 1995, less than two (2) years of her disablement from the same.
8. The repetitive use of her arms and hands required by plaintiff's job duties with defendant-employer caused her to suffer from carpal tunnel syndrome and right shoulder impingement syndrome. Plaintiff was at a greater risk of developing these conditions than members of the general public who were not situated in this type of employment.
9. As a result of her carpal tunnel syndrome and shoulder impingement syndrome, plaintiff sustained a forty percent (40%) permanent partial disability to her right arm.
10. Plaintiff received approximately fifty-two weeks of short-term disability payments during some portion of her time out of work.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's acquisition and aggravation of her carpal tunnel syndrome and shoulder impingement syndrome was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, are not ordinary diseases of life to which the general public not so employed is equally exposed, and are, therefore, occupational diseases. G.S. § 97-53(13).
2. Beginning 27 April 1993, plaintiff suffered from occupational diseases which rendered her incapable of earning, at any job, the wages she was receiving at the time of her incapacity, and on said date, plaintiff was informed by competent medical authority of the nature and work-related cause of the diseases. Plaintiff filed a claim with respect to her condition on 12 April 1995, less than two (2) years of her disablement from the same; therefore, plaintiff's claim for compensation was timely filed. G.S. § 97-58 (c).
3. As a result of her contraction of compensable occupational diseases, plaintiff is entitled to temporary total disability compensation at the rate of $151.22 per week, from 27 April 1993 through 6 May 1994. Defendants are entitled to a credit for any wages plaintiff was paid by defendant-employer during said period, as well as a credit for any weekly short-term disability payments made by defendants during said period. G.S. § 97-29; 97-42.
4. As a result of her contraction of compensable occupational diseases, plaintiff is entitled to permanent partial disability benefits for the forty percent (40%) permanent partial disability she sustained to her right arm. G.S. § 97-31.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her compensable contraction of occupational diseases, defendants shall pay temporary total disability compensation at the rate of $151.22 per week, from 27 April 1993 to 6 May 1994, minus a credit for any wages and short-term disability plaintiff was paid by defendant-employer during said period of disability. Said amount shall be paid to plaintiff in one lump sum, subject to the credits and attorney's fee as approved below.
2. For her permanent partial disability, defendants shall pay compensation for the forty percent (40%) permanent partial disability plaintiff sustained to her right arm as a result of her contraction of an occupational disease at the rate of $151.22 for 96 weeks. Said sum shall be paid to plaintiff in one lump sum, subject to the attorney's fee approved below.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable contraction of occupational diseases when bills for the same have been submitted for approval by the Industrial Commission pursuant to Industrial Commission procedures.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 and 2 of this AWARD is approved for plaintiff's counsel, and shall be paid as follows: twenty-five percent of the sum due plaintiff under Paragraph 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the _____ day of April 1998
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ LAURA KRANIFIELD MAVRETIC COMMISSIONER